Between July 28, 2018 and March 29, 2019, Ryan Bonneau woke up in prison every morning, even though the court had ordered its sentencing and the judgment and commitment order stated that he shall be at home during that time. Was that a lawful order? The order was, yes, it's in conformance with Rule 32. It was entered. It had a provision that violated 3624C. Did the district court have the authority to say that the last 10 months of the mandatory two-year sentence? The last 10 months of the sentence, of a 24-month sentence, cannot be in home confinement under 3624C. However, the government agreed to it, the judge imposed it, there was no objection, and there was no appeal. So the question becomes, during that time when the only basis for his incarceration, for his being in prison, was the statement of the judge at sentencing and the judgment and commitment order, which under 3621C is the only valid basis for the custodian to keep him in prison. When all those things, they said that he was supposed to be at home. By unilaterally violating the order of the judge, the executive branch violated the basic rule of law. It's an illegal sentence. He was, during that 244 days. At some point, it got back to the district judge. Is that correct? Like, was that a motion for a preliminary injunction or? There was a pro se, desperate pro se habeas corpus, and that is the same issue that is before the court now. During those 244 days, was he unlawfully confined when the judicial branch had never corrected the error? And this court in Bergman has held that the only sentence that is legally cognizable is the actual oral pronouncement in the presence of the defendant. Outside the presence of the defendant, the executive branch unilaterally decided he cannot spend his time in home confinement. If there was a problem with that judgment and commitment order, the only person who can fix that is the judge. The executive branch has no authority to unilaterally change a judgment. And that's why this case involves three of the most fundamental pillars of our criminal justice system. Only the judge has the authority to take a citizen's liberty. Only the judge has the authority to impose a judgment. And if there's an error, that correction has to be made by the judge. Otherwise, the executive branch becomes ineffective. So you filed a 2241 petition here, correct? Yes. He was serving his time in Sheridan. And the allegation is that he's being held contrary to law. Yes, absolutely. So the contrary to law prong stems from what the district court judge ordered as his sentence? No. What was contrary to law was that the executive branch was violating what the judicial branch said without obtaining the judicial correction. So your focus is on BOP's decision not to abide by the district court judge's order? Yes. The only basis for the executive branch, the Bureau of Prisons, to hold him is that judgment and commitment order. Whether it violates the statute or not, they cannot require prison when it says home without going back to the judge and making a determination what the law is. It's a quintessential judicial function to impose sentence. You cannot hand that over de facto to the executive branch without violating the separation of powers. And here we not only have the violation of the judicial function, we also have the executive branch. It's a unitary department of justice. The Bureau of Prisons says, oh, we can't help what the prosecutor agreed to, the 10 months of home confinement. And the prosecutor says, oh, I can't do anything about how the Bureau of Prisons is executing the sentence. But they're the same executive branch. They're the same department of justice. And you can't, in fairness and without violating the separation of powers, have that executive branch take those inconsistent positions without violating the equitable principles of waiver and estoppel. And here we have all of this happening with a client, with a prisoner, pro se. He's already substantially served his sentence, and then he realizes they are not allowing my ó oh, it says I'm supposed to be at home for these 244 days, these over 8 months. So let me ask you this, Mr. Saini. What's the relief now that you're seeking? The first thing we have to doó He's out of custody, correct? He isó He's out ofóhe's been released from hisó Yes, he's onó From his confinement. He's serving his term of supervised release at this point. He filed everything while he was still in prison. And the relief, none of the relief can be formulated until we first determine was he being held in violation of law, and he was. Nobody has ever made that determination. That's what this Court needs to do as the preliminary to any effective relief for Mr. Bonneau. Once we make that determination, then the habeas corpus statute and common law habeas corpus says what is the equitable remedy? What is fair to do when somebody has been forced to over-serve a sentence in violation of law, had his basic trial rights waived on a bait-and-switch basis? He's told one thing, and then he's sitting there, no counsel, no procedure. So what would you have us do? I would reverse the denial of habeas corpus, make a declaration, a declaratory judgment that, yes, his rights were violated and in a significant way, and remand to the district court that in light of those findings, what are the equitable remedies? What is the range of equitable remedies that could be provided? So what if the judge says, well, I think under all the circumstances, I still think he should have had one year of supervised release. One year of supervised release is back in play. End of story. Well, first of all, that's not the end of the story because the declaratory relief itself is significant. We have a person who's been told, you got played by the system, the rule of law was violated in your case, and you have nothing to say about it. You're saying to him, yes, we recognize there was an error that occurred. And that itself is part of the remedy, the declaratory judgment. But there's a range of things that a judge could do in this circumstance, and I would suggest that it would be an abuse of discretion not to provide some meaningful form of relief. But the first thing that we have to do, and the predicate for everything here, is a determination of whether he was held during those 244 days where he's in prison every day that the judge has told him he's supposed to be at home. There's got to be a remedy for that. Wasn't there at some point in the proceeding, maybe this was in connection with the pro se matters that were brought to the district judge's attention, but didn't the judge at some point say, well, it was just a recommendation? No. I think what he said was he ordered it. I mean, the record says what it says. He said it shall be served day for day in the oral pronouncement. He says it shall be served the last 10 months in the judgment and commitment order. So regardless of any characterization, it was a mandatory order. But I don't think the judge ever really took that. Later on he said, no, it was a recommendation, not an order. That's what the Bureau of Prisons treated as a recommendation. That's not what he did, though. Later on, though, in one of those pro se proceedings, didn't he say something to that effect? Maybe I'm wrong. No, I think I know the part that you're talking about. And I don't think that he said that it was he was I think he was articulating that it was treated as a recommendation. I don't think he ever stepped back from the fact that he ordered home confinement. And it turned out to be part of the plea agreement that was not doable, I think, is what he said in that part of it. And with your permission, I'll reserve the remainder. Thank you. Thank you. May it please the court. Jared Hager, on behalf of the United States. Your Honor, is the sentence in this case was 24 months imprisonment and the BOP lawfully executed and administered that sentence. The BOP didn't deem the sentence unlawful and it didn't de facto amend the sentence. The quote unquote sentence is equal to its length of time, not the place where it served. And how do we know that? Well, Congress tells us in Section 3551, it sets out the types of authorized sentence to include a term of imprisonment. In Section 3581, it sets authorized terms, all in terms of the length of time in custody. Now, Section 3621 talks about the place of imprisonment and that power is granted plenary authority to the Bureau of Prisons. They take custody and they decide where to place a prisoner. 3621B answers the question that Judge Paez was asking. It says that any order, recommendation, or request by the judicial branch shall have no binding effect on the executive branch. Congress matters and that's what makes the separation of powers argument so absurd. The BOP has statutory limits on its home confinement placement authority and that's set by Section 3624C. It can only put a prisoner in pre-release custody at home for 10 percent or six months of the sentence. And again, the sentence in this case was 24 months. You're right. The judgment says, the defendant, the written judgment, I'm reading from the written judgment, not his in-court sentence. But the judgment says, the defendant is hereby committed to the custody of the Federal Bureau of Prisons to be in prison for a term of 24 months. You're right. But the next sentence says, the defendant shall serve the last 10 remaining months of confinement in home confinement. What was that all about? That's a non-binding order. Shall? It's an order, for sure, but it's non-binding and we know that because Congress has already anticipated the situation. There's no need for the Bureau of Prisons to go back to the judicial branch when this legislative branch has already addressed the situation. That makes the argument about judicial amendment absurd. Congress already anticipated this case when a judge orders or recommends or requests home confinement. And in that case, it's non-binding on the Bureau of Prisons. They do not, that's surplusage. And so we think that the sentence is the first. So the government, the U.S. attorneys didn't think that there was anything illegal about this. That's right, and we did not appeal. And I want to correct one. You know, we do see appeals from the government when the government believes the district court has imposed an illegal sentence. Yeah, and it's a non-mandatory appeal. We're not required to appeal. In this case, it's important to recognize that the excerpts of record, page 115, that contains the plea colloquy. And the government didn't agree to 10 months of home confinement. The government agreed to a 24-month sentence. And secondarily, the government agreed to vacate a supervised release violation. Now, that allowed Mr. Bonneau to receive eight months of prior custody credit against this sentence. So to argue that somehow the equities tilt in Mr. Bonneau's favor ignores that reality. The two things the government agreed to in this case, a 24-month sentence, and to vacate a supervised release violation sentence on one of his three or four prior federal felonies, which allowed eight months of prior custody credit against the sentence. So the U.S. attorney here, when the sentence was handed down, didn't think that it was necessary to say, judge. You might clarify that that's just a recommendation, not a mandatory order? What the record reflects is that there was no objection to that recommendation or that order that is non-binding. Again, that's for the Bureau of Prisons to decide as the plenary authority for place of confinement. And that's from the Tapia case, which is a unanimous Supreme Court precedent. It says plenary authority subject to statutory constraints. There is no statutory constraint here to be a hook for why this habeas petition or why custody was unlawful in this case. One wonders what would have happened had the AUSA said something. And the district court has recognized that. That's excerpts of Record 28. If either the Bureau of Prisons went back to the district court or if there was an objection, the sentencing court recognizes the statutory constraint on the Bureau of Prisons. He's denied a 2255 motion for ineffective assistance because there's no prejudice and no harm in this case. Had the district court known either from an objection by the prosecutors or because the Bureau of Prisons goes back to the judge and says we can't do this, Judge Mossman has said he would have stricken the home confinement order because there's no binding authority for that. So what else is unique? If you go down in the judgment, the next line, there's a checkbox and it says the court makes the following recommendations to the Bureau of Prisons. And it's checked. And then one of the recommendations is that the defendant shall be placed at Sheridan. Now, the judge didn't do that. You know, it's clear that he's saying here these are recommendations. Above the line, it sure seems to be saying my judgment is that he's ordered to be released. And we don't quibble with that. The prior sentence is an order of home confinement. The secondary sentence is a recommendation as to FCI Sheridan. That order and that recommendation, if you look at the text, the purpose and the effect of Section 3621B, it says any order, recommendation or request shall not be binding on the Bureau of Prisons. So it is non-binding surplusage. The district court is free to make that order. It doesn't make it unlawful. It doesn't make it non-appealable, as in the Cintron-Fernandez case. What it does do is it's non-binding. It's a recommendation. It's a suggestion. It doesn't control what the Bureau of Prisons does. In all cases, the Bureau of Prisons has to follow what Congress says about home confinement. Prisoners have no right to pre-release custody in home confinement. Congress gives them that right, and Congress limits that right. And it's done so in this case to a hard amount of time. Let's keep coming back to if the AUSA had pointed this out to the district court, what would have happened? The district court would have stricken the home confinement order. And the district court says that in an excerpt of the record. We wouldn't be here today. What's that? We wouldn't be here today on this issue. That's right. When I wrote this case, I got to thinking about what Judge Karnes said in the case of the 11th Circuit. In litigation, the government never blushes. The Bureau of Prisons followed the law in this case. The habeas remedy The Bureau of Prisons never blushes. We know that. The habeas corpus extends to prisoners who are in custody in violation of the law. The custodial sentence Obviously, you're not moved by the passionate appeal that your opposing counsel is making here this morning. I believe that Mr. Bonneau got a great deal. He had two years when he was facing 12. He got eight extra months because the government agreed to vacate the supervised release violation. Judge Mossman is no stranger to Mr. Bonneau. He's got five federal felony cases. That's why he said he's not getting out any earlier. So does that bring us back to the question of mootness? I think that there's a question of mootness. I shouldn't refer to any defendant as this guy. This guy's not going anywhere soon, anytime. His sentence is over, what, the 20th of May of this month? Yeah, he's facing another supervised release violation. But the mootness question is important. And I would encourage the court to consider reining in moot jaheed, which is run amok. There are two important distinctions here between moot jaheed, Reynolds, and Gunderson. I'm concerned about that because those cases seem to be quite clear. If there's any possibility of relief, then the case is not moot. Those cases involve a claim of over-incarceration in terms of the length of time. Now, in those cases, you have a non-trivial, realistic possibility of a reduction of supervised release because you've over-served your sentence. In this case, the sentence was two years, and Mr. Bonneau did not over-serve that sentence. He didn't spend eight extra months in prison when he should have been on supervised release. Now, that's the first distinction. The second, and we appreciate the 28J letter citing to Allen, this possibility has to be non-trivial. The existence of supervised release is not by itself enough to take this case out of mootness. We're talking about an exception to mootness based on 2241, which requires custody. Now, that exception needs to be constrained to the case of over-confinement in terms of extending your length of sentence, and it needs to be non-trivial. And I think this court should take notice of Judge Mossman's statements on the record that there is no worse candidate for a reduction of supervised release, that the community is put at risk when this defendant is not on supervised release. Was the district court required to impose one year of supervised release? It was not. I'm not sure, Your Honor. Could he have imposed no supervised release? He could reduce supervised release, but that was not the benefit of this plea bargain. The plea bargain is not in the excerpts of record, and I submit that's because it does not support Mr. Bonneau's assertion that the government agreed to this sentence. But this court can take judicial notice of docket entries 42 and 43 of the criminal case, that's 17CR398, and those clearly establish that the government did not agree to this sentence. The defense attorney asked for it and the judge imposed it, but 3621 makes it a non-binding order. If there's no more questions, Your Honor, we urge you to affirm. Okay. Thank you. Mr. Sady? I'd like to make three points, Your Honor. First, on mootness. This case is directly within the Mujahid line of cases. But not only that, it is worse because here we have a situation where he was served a harsher sentence than the judge ordered, and it all goes back to the judgment rather than purely the Bureau of Prison program. Second, regarding the plea agreement, of course there was one. We know that from three things. One is the pre-meeting on the seven days before at 103 of the excerpt of record, where they discuss on the record talking about the 10 months. Second, in the actual proceedings, what could possibly be happening except for that the government is agreeing to the 10 months? And third, I think I found the passage that Judge Pius was referring to, which is on page 11 of the opening brief, which is you may well have gotten the government to make as part of your plea agreement. It turns out to be a sentence that cannot be imposed under the statute, and in another place it's doable. They're talking about what the government did in the plea agreement. The last point I want to make, Your Honor, is this case goes right to the heart of the separation of powers. When the judicial branch says shall, the government cannot unilaterally decide, oh, I'm going to ignore that. That goes to the heart of our rule of law, our heart of our constitutional system, and Mr. Bonneau deserves better. We deserve better. The writ habeas corpus should have been entered, and we ask the Court to reverse. Okay. Thank you, Mr. Sagan. Thank you.
judges: Wollman, Fernandez, Paez